489 So.2d 1118 (1986)
FLORIDA SOCIETY OF OPHTHALMOLOGY, Petitioner,
v.
FLORIDA OPTOMETRIC ASSOCIATION, Jon S. Jacobs, O.D., and Fred R. Dudley, Respondents.
Bob GRAHAM, Governor of Florida, George Firestone, As Secretary of the State of Florida, and Florida Society of Ophthalmology, Petitioners,
v.
FLORIDA OPTOMETRIC ASSOCIATION, Jon S. Jacobs, O.D., and Fred R. Dudley, Respondents.
George FIRESTONE, As Secretary of the State of Florida, and Bob Graham, As Governor of the State of Florida, and Florida Society of Ophthalmology, Petitioners,
v.
FLORIDA OPTOMETRIC ASSOCIATION, Jon S. Jacobs, O.D., and Fred R. Dudley, Respondents.
Nos. 66762, 66768 and 66774.
Supreme Court of Florida.
April 17, 1986.
Rehearing Denied July 7, 1986.
Richard B. Collins of Perkins & Collins, Tallahassee, and Arthur J. England of Fine, Jacobson, Schwartz, Nash, Block & England, Miami, for petitioner, Fla. Society of Ophthalmology.
Sidney McKenzie, III, Gen. Counsel and Arthur R. Wiedinger, Jr., Asst. Gen. Counsel, Tallahassee, for petitioners, Bob Graham, Governor of Fla., et al.
Thomas G. Tomasello, Gen. Counsel, Tallahassee, for petitioners, George Firestone, as Secretary of the State of Fla., et al.
Leonard A. Carson, James W. Linn and John D.C. Newton, II of Carson & Linn, Tallahassee, for respondents.
Reubin O'D. Askew, Former Governor of the State of Fla., Miami, for amicus curiae.
Wilbur E. Brewton of Taylor, Brion, Buker & Greene, Tallahassee, amicus curiae, for Claude R. Kirk, Jr., Former Governor of State of Fla.
BARKETT, Justice.
This cause is before us pursuant to jurisdiction granted in article V, section 3(b)(4), Florida Constitution. The First District Court of Appeal certified this case as presenting a question of great public importance. Florida Optometric Association v. Firestone, 465 So.2d 1319 (Fla. 1st DCA 1985). The principal question presented is whether the Florida Constitution affords the governor seven or fifteen *1119 days to veto a bill presented to him after the legislature has adjourned sine die.
In May of 1983, the Florida House and Senate passed SB 168 which provides, inter alia, that certain optometrists may administer, use, and prescribe medicinal drugs. The House and Senate adjourned sine die the 1983 regular session on June 13, 1983. On June 14, 1983, the Legislature presented SB 168 to the governor. Fifteen days later, on June 29, 1983, the governor vetoed the bill. The Senate took no action on the bill subsequent to the gubernatorial veto.
The Florida Optometric Association, respondents herein, petitioned the trial court for a writ of mandamus ordering the Florida Secretary of State to publish SB 168 as a law of the state. The association claimed that the governor's veto of the bill was untimely and therefore ineffectual. The circuit court dismissed the association's petition with prejudice. On appeal, the First District Court reversed the order of dismissal, remanded the cause to the circuit court with directions that the writ be issued, and certified to this Court the following question as being of great public importance:
Whether Article III, section 8(a), Florida Constitution, allows the governor seven or fifteen consecutive days to act on a bill presented to him after the legislature adjourns sine die, and, if he is allowed only seven days thereafter, should the effect of an opinion so holding have only prospective application?
Article III, section 8(a) provides, in part: Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven consecutive days after presentation. If during that period or on the seventh day the legislature adjourns sine die or takes a recess of more than thirty days, he shall have fifteen consecutive days from the date of presentation to act on the bill.
Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language. If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written. See, e.g. Plante v. Florida Commission on Ethics, 354 So.2d 87, 89 (Fla. 1st DCA 1977).
The provision in question, however, does not explicitly address the situation before us in which a bill is presented to the governor after the legislature has adjourned sine die. We recognize the rule that constitutional language must be allowed to "speak for itself." Application of that rule, however, must be tempered by judicial deference to offsetting and equally constraining rules. We refer to two fundamental principles of constitutional adjudication. First, constitutions "receive a broader and more liberal construction than statutes." State Highway Commission v. Spainhower, 504 S.W.2d 121, 125 (Mo. 1973). Second, constitutional provisions should not be construed so as to defeat their underlying objectives. Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979); State ex rel. Dade County v. Dickinson, 230 So.2d 130, 135 (Fla. 1969).
Constitutions are "living documents," not easily amended, which demand greater flexibility in interpretation than that required by legislatively enacted statutes. Consequently, courts are far less circumscribed in construing language in the area of constitutional interpretation than in the realm of statutory construction. See Malnak v. Yogi, 592 F.2d 197, 204 (3d Cir.1979). When adjudicating constitutional issues, the principles, rather than the direct operation or literal meaning of the words used, measure the purpose and scope of a provision. United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932). See also Bain Peanut Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482 (1932) ("[t]he interpretation of constitutional principles must not be too literal"); Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979) ("[t]he spirit of the constitution is as obligatory as the written word").
An essential purpose of veto provisions such as that found in article III, section 8(a) is to safeguard the executive's opportunity *1120 to consider all bills presented to him. See Edwards v. United States, 286 U.S. 482, 486, 52 S.Ct. 627, 628, 76 L.Ed. 1239 (1932). Typically, a plethora of bills is passed and then presented to the executive at the end of a legislative session. The article III, section 8(a) grant of additional time to veto such bills is designed to afford the governor ample opportunity to review this last-minute legislative onslaught.
It is evident from the record that in a typical session of the Florida legislature some 60 percent of all bills passed during the session are presented to the governor just before or immediately after adjournment, with the bulk submitted after adjournment. The record further discloses that, in every year from 1979 to 1983, the omnibus general appropriations bill was presented to the executive post-adjournment. The governor's need for additional time to review legislation is, therefore, the most pronounced in regard to those bills presented after adjournment.
In order to give full effect to the constitutional objective that the governor be afforded additional opportunity to review legislation when his time constraints are the most severe, article III, section 8(a) must be read as allotting the governor fifteen days to veto those bills presented to him after adjournment sine die. The provision's design would be thwarted were the governor allowed only seven days to review what is generally the majority of the bills presented, and allowed fifteen days to review what is, in most years, a smaller number of bills presented during the last week of the session.
The Supreme Court, in Wright v. United States, 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938), was called upon to construe the executive's veto power narrowly. The Court refused and stated that it would not adopt any construction which would frustrate the veto provision's cardinal objective that the executive be afforded suitable opportunity to review those bills presented to him. Id. at 596, 58 S.Ct. at 400-01. We find ourselves facing a similar request, and we respond with a like answer. We will not construe article III, section 8(a) in a manner that defeats its underlying constitutional objective. Rather, we interpret the provision as affording the governor fifteen days (from presentment) to veto those bills submitted after the legislature has adjourned sine die.
Our holding is supported not only by the maxims of constitutional construction discussed above, but by others as well. If a constitutional provision is silent on a given issue, or if its literal language clashes irreconcilably with its obvious purpose, then courts may resort to consideration of historical evidence concerning the intent of those who drafted and adopted that provision. The various historical materials in the record relevant to the drafting of article III, section 8(a) leave no doubt but that the drafters never intended that the governor be limited to seven days to review bills presented after adjournment sine die.
Additionally, our holding is supported by that rule of constitutional interpretation which provides that the construction traditionally given to a provision by those officers affected thereby is presumably correct. In Amos v. Moseley, 74 Fla. 555, 77 So. 619, 625 (1917), we noted that
where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the Constitution ... it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. And where this has been given by officers in the discharge of their official duty ... the argument ab inconvenienti is sometimes allowed to have very great weight.
We recently restated this principle more emphatically when we held that such established constructions of constitutional provisions *1121 are "presumptively correct unless manifestly erroneous." State v. Kaufman, 430 So.2d 904, 907 (Fla. 1983). See also Vinales v. State, 394 So.2d 993, 994 (Fla. 1981); Brown v. Firestone, 382 So.2d 654, 671 (Fla. 1980). The record discloses unequivocally that both the governor and the legislature have consistently construed article III, section 8(a) as affording the executive fifteen days to veto bills presented to him after adjournment sine die. Indeed, this Court, in an advisory opinion, computed the days available for veto of a bill presented after adjournment as fifteen and not seven. In re Advisory Opinion to the Governor, 374 So.2d 959 (Fla. 1979).
Accordingly, we hold that the governor's June 29, 1983 veto of SB 168 was a timely, effective exercise of the gubernatorial veto power under article III, section 8(a) of the Florida Constitution, and quash the decision of the district court below.
It is so ordered.
OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs specially with an opinion.
BOYD, C.J., dissents with an opinion, in which ADKINS, J., concurs.
EHRLICH, Justice, specially concurring.
I concur with the decision of the Court, and while I do not fault the reasoning of the opinion, my analysis differs but reaches the same result.
I quite agree with the majority that "the various historical materials in the record relevant to the drafting of article III, section 8(a) leave no doubt that the drafters never intended that the governor be limited to seven days to review bills presented after adjournment sine die." I also agree that the record discloses unequivocally that both the governors and the legislatures since the adoption of the 1968 Constitution "have consistently construed article III, section 8(a) as affording the executive fifteen days to veto bills presented to him after adjournment sine die." It is also quite clear that the only changes from the 1885 provision that the drafters sought to make related to the time the governor had within which to veto and when that time began to run.
Article III, section 8(a) of the 1968 Constitution was assimilated from article III, section 28 and article IV, section 18 of the 1885 Constitution. Article III, section 28[1] provided that the governor had five days, exclusive of Sunday, after presentment within which to veto a bill passed by the legislature, and that if the legislature, by its final adjournment, prevented such action, the governor had twenty days after adjournment within which to veto the bill. Article III, section 28 was silent as to the number of days the governor had to act on a bill presented to him after adjournment.
We can take judicial notice that under the 1885 Constitution, bills were presented to the governor after adjournment and vetoed at a point in time in excess of five days after adjournment. I can find no reported case where any such veto was challenged in the appellate courts of Florida on the ground that the governor only had five days after adjournment within which to exercise his veto power. It was *1122 obviously accepted by both the legislatures and the governors who served under the 1885 Constitution that the five day veto provision of article III, section 28 was not applicable to bills presented to the governor after adjournment, and that the governor had twenty days after adjournment to exercise his veto power as to such bills.
The Florida Constitutional Revision Commission, which included within its membership two justices and one retired justice of this Court, recommended no substantive change in article III, section 28 of the 1885 Constitution. I can find no draft which contains a proposal that expressly provides a post-adjournment period for gubernatorial veto of a bill. All drafts have the format of article III, section 28 of the 1885 Constitution which is carried over into article III, section 8 of the 1968 Constitution, namely, a stated period of time within which the governor must act, but that if within such period the legislature adjourns, or recesses, then the governor has a longer period of time within which to veto.
The revised Constitution as proposed by the Constitutional Revision Commission was put in its final form by the drafting and style committee of the Commission composed of circuit court judge Hugh Taylor, Chairman, district court of appeal judge, Thomas H. Barkdull, Jr., and Senator John E. Mathews, Jr. Article III, section 8(a) as proposed to the legislature by the Constitutional Revision Commission provided in pertinent part:
Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven days after presentation. If during that period the legislature adjourns sine die or takes a recess of more than thirty days, he shall have twenty days from the date of adjournment or recess to act on the bill.
This proposal was amended by the legislature to its present form, with the following time changes: It increased the period for the governor's consideration from five to seven consecutive days, and provided that if during such period, or on the seventh day, the legislature adjourns sine die or takes a recess of more than thirty days, the time within which the governor is required to act is reduced from twenty days to fifteen consecutive days. Such time was to run from the date of presentation rather than from the date of adjournment or recess.
At the time the 1968 Constitution was presented to the electors of Florida for their consideration, it was explained in an official publication of the Florida Legislature[2] that the new article III, section 8(a) was a redraft of and a combination of article III, section 28 and article IV, section 18 of the 1885 Constitution. The explanation and analysis in relevant part was:
EXECUTIVE APPROVAL AND VETO.
Section 8. Redrafts and combines the provisions of Section 28, Article III and Section 18, Article IV of the present Constitution. Permits veto during session within seven consecutive days after presentation, instead of the present "five days (Sunday excepted)." Fifteen day period, from date of presentation, for Governor to act on bills is authorized when the Legislature recesses for more than thirty (30) days, or upon sine die adjournment. Present provisions allow the Governor twenty days (20) after adjournment. (emphasis supplied)
Article III, section 8(a)[3] makes no specific mention of the number of days the governor *1123 has to act on a bill if presented to him after the legislature has adjourned. There are really three periods of time encompassed within section 8(a), the first 53 days, the last 7 days of the session where the Legislature either adjourns sine die or takes a recess of more than 30 days, and post-adjournment. We know from the record that post-adjournment presentation of bills is a very critical period with respect to executive approval and veto.
The first sentence of article III, section 8(a) provides that the governor has seven days after presentation within which to veto a bill. That sentence is silent on whether the legislature has to be in session or can be in adjournment to be applicable. However, the second sentence of section 8(a) gives meaning to the first sentence, and provides that if within the seven day period after presentation to the governor, the legislature adjourns sine die or takes a recess for more than 30 days, the governor has fifteen consecutive days from the date of presentation to act on the bill. Since the second sentence addresses the last seven days of the session and treats the veto period differently than it is treated in the first sentence, the latter has to refer to the period when the legislature is in session, exclusive of the last seven days. The second sentence relates to all other periods, the last seven days expressly, and by implication post-adjournment. This analysis is consistent with and supported by the analysis made by the Legislative Reference Bureau cited above.
Article III, section 28 of the 1885 Constitution was likewise silent as to the number of days the governor had to act on a bill presented to him after the legislature has adjourned. The second sentence of that section provided that the governor had five days, Sunday excepted, within which to veto a bill. That sentence is also silent on whether the legislature had to be in session to be applicable. Here again, the third sentence gives meaning to the second sentence and provided that if the legislature, by its final adjournment, prevented such action, the governor had twenty days after adjournment within which to veto. Since the third sentence, in effect addresses the last five days of the session and treats the veto period differently than it is treated in the second sentence, the latter also has to refer to the period when the legislature is in session, exclusive of the last five days ... The third sentence relates to all other periods, the last five days expressly, and likewise by implication post-adjournment.
The district court of appeal's analysis of article III, section 8(a) admittedly has superficial credibility and charm. According to the district court of appeal, under article III, section 8(a) the governor has seven days to veto, but there are two exceptions which, if they occur during the seven day period after presentation, operate to extend such period: 1) the legislature's adjourning sine die, and 2) the legislature's recessing more than 30 days. According to that analysis if either of these events occurs, the governor has an additional eight days or a total of fifteen consecutive days from the date of presentment, to exercise his veto. In the case at bar neither of the two exceptions took place and therefore, since the bill was presented to the governor after adjournment, he had only seven days to veto.
If we apply the district court of appeal's analysis to article III, section 28 of the 1885 Constitution, we come up with the same result. The governor would have had five days to veto instead of twenty days.
Applying the district court of appeal's analysis to the current constitutional provision leads to absolutely absurd results. For example, if the bill is presented to the governor on the 59th day of the session, he has fifteen days after presentment to veto it, but if presented to him one day after adjournment, he has only seven days to veto it. In the hypothetical, a difference of two days in presentment, means a reduction of eight days within which the governor can exercise his veto power. I cannot believe that the distinguished constitutional *1124 lawyers and jurists who recommended the change, and the legislature which approved the change for submission to the people of Florida in a general election, intended such counterproductive results. The record clearly indicates otherwise.
On the basis of the foregoing, I am of the opinion that the governor's veto in question was timely.
BOYD, Chief Justice, dissenting.
The result that the majority reaches is reasonable and logical. It could well be suggested that the majority's reasoning and conclusion should have been provided for in the Constitution. It can well be argued that such reasoning and result should be incorporated into the Florida Constitution by amendment. The only problem with the Court's conclusion is that as presently written, the plain and unambiguous language of the constitution dictates a different result. Thus there is no room for constitutional interpretation or construction, nor for policy arguments of any kind.
Article III, section 8(a), Florida Constitution, provides in pertinent part:
Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven consecutive days after presentation. If during that period or on the seventh day the legislature adjourns sine die or takes a recess of more than thirty days, he shall have fifteen consecutive days from the date of presentation to act on the bill.
The constitutional language set forth above clearly provides that the bill "shall become a law" if the governor "fails to veto it within seven consecutive days after presentation." There are two, and only two, exceptions to the seven-day time limit. These are: (1) when, during the seven consecutive days following presentation, the legislature adjourns sine die; and (2) when, during the seven consecutive days following presentation, the legislature takes a recess of more than thirty days. If neither of the two exceptions occurs with regard to a given bill, then the bill in question "shall become a law if" the governor "fails to veto it within seven consecutive days after presentation."
Did either of the two exceptional situations occur here to activate the increased time allowed after presentation for exercise of the gubernatorial veto power? The answer, as clearly shown by the record, is no. Therefore the period in which the governor had the power to veto the bill expired at the end of the seventh consecutive day following the presentation of the bill to the governor.
The power of the judiciary to interpret or construe the constitution depends on the existence of some uncertainty or ambiguity in the constitutional language. City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817 (Fla. 1970). In the absence of any such ambiguity, courts have only the authority to apply the plain language and to enter judgments as thus mandated.[*] If the governor should have fifteen days to consider a bill presented him after the legislature has adjourned, a proposal for amendment of the constitution to so provide should be presented to the people for electoral adoption.
For the foregoing reasons I respectfully dissent and would approve the decision of the district court of appeal, with one qualification. While I would hold that the respondents, who timely challenged the veto that affected them, are entitled to have the veto of 1983 Senate Bill 168 declared void and the bill declared to be a law, I would otherwise give the holding prospective effect only. Governors serving since 1968 have acted under the erroneous belief that they had fifteen days to veto bills presented *1125 after adjournment. The possibility of application of a contrary holding to long-past vetoes would create uncertainty and confusion in the law.
ADKINS, J., concurs.
NOTES
[1] Art. III, § 28 provided in relevant part:

Every bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor; if he approves it he shall sign it, but if not he shall return it with his objections to the House in which it originated, which House shall cause such objections to be entered upon its Journal, and proceed to reconsider it; if, after such reconsideration, it shall pass both houses by a two-thirds vote of members present, which vote shall be entered on the Journal of each House, it shall become a law. If any bill shall not be returned within five days after it shall have been presented to the Governor, (Sunday excepted) the same shall be a law, in like manner as if he had signed it. If the Legislature, by its final adjournment prevent such action, such bill shall be a law, unless the Governor within twenty (20) days after the adjournment, shall file such bill with his objections thereto, in the office of the Secretary of State, who shall lay the same before the Legislature at its next session, and if the same shall receive two-thirds of the votes present, it shall become a law.
[2] A draft of the proposed 1968 Constitution submitted by the legislature to the voters for ratification at the general election of November 5, 1968, together with an analysis of the proposed revision prepared by the Legislative Reference Bureau, was published by the legislature for free public distribution.
[3] Art. III, § 8(a) provides in relevant part:

(a) Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven consecutive days after presentation. If during that period or on the seventh day the legislature adjourns sine die or takes a recess of more than thirty days, he shall have fifteen consecutive days from the date of presentation to act on the bill.
[*] Petitioners seek to create an ambiguity by arguing that the framers did not contemplate the situation where bills are presented after adjournment. However, respondents more convincingly point out that the framers did contemplate presentation after adjournment, as is evident in article III, section 7, which provides for signature of bills by legislative presiding officers "during the session or as soon as practicable after ... adjournment sine die."