992 So.2d 142 (2008)
FLORIDA DEPARTMENT OF STATE, Appellant,
v.
Beverly SLOUGH, et al., Appellees.
No. SC08-1569.
Supreme Court of Florida.
September 15, 2008.
*143 Bill McCollum, Attorney General, Scott D. Makar, Solicitor General, and Louis F. Hubener, Chief Deputy Solicitor General, FL, Florida; Mark Herron and Robert J. Telfer, III of Messer, Caparello and Self, P.A., Tallahassee, FL, for Appellants.
Barry Richard of Greenberg Traurig, P.A., Tallahassee, FL, for Appellees.
Robert E. Weissert, Tallahassee, FL, on behalf of Florida TaxWatch, as Amicus Curiae.
LEWIS, J.
The Florida Taxation and Budget Reform Commission proposed an amendment (Amendment 5) to the Florida Constitution that would impact and change several aspects of Florida's taxation and financial *144 structure. Plaintiffs/Appellees (collectively "Slough") filed an action in the Second Judicial Circuit Court contending that the ballot title and summary for proposed Amendment 5 were misleading. The trial court entered a summary final judgment that ordered proposed Amendment 5 removed from the November 2008 general election ballot. The Florida Department of State (State) sought review of that summary final judgment in the First District Court of Appeal, which certified to this Court that the judgment is of great public importance and requires immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const.

BACKGROUND AND PROCEDURAL HISTORY
Article XI of the Florida Constitution provides that, beginning in 2007 and every twentieth year thereafter, a Taxation and Budget Reform Commission (Commission) shall be established. See art. XI, § 6(a), Fla. Const. Section 6 further provides:
(d) The commission shall examine the state budgetary process, the revenue needs and expenditure processes of the state, the appropriateness of the tax structure of the state, and governmental productivity and efficiency; review policy as it relates to the ability of state and local government to tax and adequately fund governmental operations and capital facilities required to meet the state's needs during the next twenty year period; determine methods favored by the citizens of the state to fund the needs of the state, including alternative methods for raising sufficient revenues for the needs of the state; determine measures that could be instituted to effectively gather funds from existing tax sources; examine constitutional limitations on taxation and expenditures at the state and local level; and review the state's comprehensive planning, budgeting and needs assessment processes to determine whether the resulting information adequately supports a strategic decisionmaking process.
(e) .... Not later than one hundred eighty days prior to the general election in the second year following the year in which the commission is established, the commission shall file with the custodian of state records its proposal, if any, of a revision of this constitution or any part of it dealing with taxation or the state budgetary process.
See id. The Commission conducted meetings during its 2007-08 session, and subsequently proposed seven constitutional amendments. Proposed Amendment 5 is the subject of the instant case. The Commission's resolution concerning proposed Amendment 5 provides that the purpose of the amendment is "to limit the growth of assessments of certain real property for the purposes of ad valorem taxation, to mandate the elimination of property taxes set as required local effort, to reduce the maximum millage for school purposes, and to replace the revenues from property taxes set as required local effort with other funds."[1]
Slough filed an action in the Second Judicial Circuit Court seeking declaratory and injunctive relief. Slough contended that the ballot title and summary for this proposed Amendment 5 are unconstitutionally misleading and fail to adequately inform voters of the chief purposes of the amendment in violation of section 101.161, *145 Florida Statutes (2007). Slough requested that the State be enjoined from placing the proposed Amendment 5 on the ballot.
The title and summary of the proposed Amendment 5 to be placed on the ballot for the general election states:
ELIMINATING STATE REQUIRED SCHOOL PROPERTY TAX AND REPLACING WITH EQUIVALENT STATE REVENUES TO FUND EDUCATION.
Replacing State required school property taxes with state revenues generating an equivalent hold harmless amount for schools through one or more of the following options: repealing sales tax exemptions not specifically excluded; increasing sales tax rate up to one percentage point; spending reductions; other revenue options created by the legislature. Limiting subject matter of laws granting future exemptions. Limiting annual increases in assessment of non-homestead real property. Lowering property tax millage rate for schools.
The trial court considered and addressed the complaint for declaratory and injunctive relief as a motion for summary judgment. The State and intervenor-defendant, VOTE YES ON 5 FOR PROPERTY TAX RELIEF, INC. (Vote Yes),[2] filed cross-motions for summary judgment.
The trial court heard argument on August 13, 2008, and subsequently entered a summary final judgment in favor of Slough. The trial court determined that the ballot title and summary were misleading. First, Slough asserted that the title and summary implied that the obligation to replace revenue eliminated by the amendment with equivalent revenue from alternate sources was permanent and continuous. The trial court noted that under the actual amendment, but not disclosed by the proposed ballot language, the Legislature would only be required to implement the "equivalent hold harmless amount" mentioned in the summary for a single year  the 2010-2011 fiscal year. The actual proposed amendment stated:
In implementing this section, the amount appropriated and set in the General Appropriations Act in the 2010-2011 fiscal year shall not be less than the amount appropriated and set in the 2008-2009 fiscal year for the funding of public schools under the Florida Education Finance Program, as increased by the average historical growth for such amounts during state fiscal years 2006-2007 and 2007-2008, which appropriated and set amount shall be referred to as the "education hold harmless amount."
(Emphasis added.) The trial court found that "the language of the title and summary convey the distinct impression that the balance of lost revenue and replacement revenue are continuing." The trial court concluded that this impression is inaccurate, and after the 2010-2011 fiscal year, there is nothing in the proposed amendment that would prohibit the State from reducing the replacement funding to an amount less than that generated by the ad valorem tax before that funding was eliminated. According to the trial court, the failure of the title and summary to inform voters of this limitation on the "equivalent hold harmless amount" rendered the provisions misleading.
The trial court also found the ballot title and summary to be misleading because they created the impression that the proposed amendment would only apply to *146 school taxes, but the proposed amendment would also actually reduce the annual maximum increase in real property assessments by local government for taxes other than school taxes from 10 percent to 5 percent.[3] The trial court recognized that the summary contained language purported to be an effect of the amendment as "Limiting annual increases in assessment of non-homestead real property." However, the trial court concluded that a voter reading the language of the title would be misled into voting for or against the amendment with reference to the title because the proposed title appears to give assurance that the amendment addresses only the required local school tax and replacement state funding. The trial court further reasoned that the Commission used a very limited, restrictive title, and the voter could reasonably conclude that the proposed amendment contains nothing beyond that which is referenced in the title itself. The trial court ultimately held that the title and summary of proposed Amendment 5 did not fairly inform voters, in clear and unambiguous language, of the chief purposes of the amendment and ordered proposed Amendment 5 to be removed from the November 2008 general election ballot.
The State sought review of the summary final judgment in the First District Court of Appeal. On August 19, 2008, the First District concluded that the issues presented by the case required immediate resolution by this Court and certified the case to this Court pursuant to Florida Rule of Appellate Procedure 9.125. See also art. V, § 3(b)(5), Fla. Const.

ANALYSIS

Standard of Review
This Court has stated that any proposed constitutional amendment must be "accurately represented on the ballot; otherwise, voter approval would be a nullity." Armstrong v. Harris, 773 So.2d 7, 12 (Fla.2000). Section 101.161(1), Florida Statutes (2007), codifies this principle:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... Except for amendments and ballot language proposed by joint resolution, the substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
*147 (Emphasis supplied.) See also Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982) ("[T]he voter should not be misled.... All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide.... What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." (alteration in original) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954))). Reduced to colloquial terms, a ballot title and summary cannot "fly under false colors" or "hide the ball" with regard to the true effect of an amendment. See Armstrong, 773 So.2d at 16. To determine whether the ballot title and summary of proposed Amendment 5 satisfy the requirements of section 101.161, Florida Statutes (2007), the Court must consider two questions: "(1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and summary, as written, misleads the public." Advisory Opinion to Attorney Gen. re Prohibiting State Spending for Experimentation that Involves the Destruction of a Live Human Embryo, 959 So.2d 210, 213-14 (Fla.2007) (quoting Advisory Opinion to Attorney Gen. re Fla. Marriage Prot. Amendment, 926 So.2d 1229, 1236 (Fla.2006)). We do not consider, nor do we address, the substantive merit of the proposed amendment.
The standard of review in the instant case is de novo. See Armstrong, 773 So.2d at 11 (holding that the validity of a constitutional amendment is subject to de novo review). This Court has recognized that it must exercise extreme caution and restraint before removing a constitutional amendment from Florida voters. See Advisory Opinion to Attorney Gen. re Fla. Marriage Prot. Amendment, 926 So.2d 1229, 1233 (Fla.2006). We have further noted that we have no authority to inject this Court into the process, unless the laws governing the process have been "clearly and conclusively" violated. Advisory Opinion to the Attorney Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla. 2002).
For the reasons that follow, we hold that the trial court correctly determined that proposed Amendment 5 is misleading and, therefore, fatally defective.

Replacement of Equivalent Revenue
The ballot title provides that proposed Amendment 5 "ELIMINAT[ES] STATE REQUIRED SCHOOL PROPERTY TAX AND REPLAC[ES] WITH EQUIVALENT STATE REVENUES TO FUND EDUCATION." (Emphasis supplied.) The summary states that proposed Amendment 5 will replace "state required school property taxes with state revenues generating an equivalent hold harmless amount" through a number of alternative revenue sources or spending reductions. (Emphasis supplied.) The title and summary indicate and convey the clear impression that the proposed amendment creates an annual equal trade-off; i.e., every year that school districts do not levy an ad valorem tax, the equivalent of those lost revenues will be replaced by revenue collected through other means. However, under the actual amendment, the "equivalent hold harmless amount" mentioned in the summary is only established for a single-year  the 2010-2011 fiscal year:
(2) In implementing this section, the amount appropriated and set in the General Appropriations Act in the 2010-2011 fiscal year shall not be less than the amount appropriated and set in the 2008-2009 fiscal year for the funding of public schools under the Florida Education Finance Program, as increased by *148 the average historical growth for such amounts during state fiscal years 2006-2007 and 2007-2008, which appropriated and set amount shall be referred to as the "education hold harmless amount."
Thus, after the 2010-11 fiscal year, the actual amendment would no longer require the State to replace the revenue loss created by the prohibition upon school district ad valorem tax levies and the elimination of that revenue source. The failure of both the title and summary to mention this limitation on the "equivalent" or "hold harmless" amount would reasonably lead voters to believe that they are voting to implement a provision which obligates the State to generate, on an annual basis, replacement revenue in an equivalent or hold harmless amount to that which would have been generated by school district tax levies. If voters were made aware that after the 2010-2011 fiscal year the State would no longer be required to replenish lost revenue in an "equivalent hold harmless amount," this aspect of the proposed Amendment 5 might weigh significantly in their decision to vote for or against the amendment.
We agree with the trial court that the summary is misleading because of its failure to mention the duration limitation with regard to the "hold harmless amount," which is one of the chief aspects of the amendment. This failure leaves voters with the impression that the amendment will accomplish something permanent and continuing, when in reality it does not. Cf. In re Advisory Opinion to the Attorney Gen.  Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994) (ballot summary, which provided that sugar industry would "help to pay to clean up pollution," was misleading because it gave the inaccurate impression that "entities other than the sugarcane industry will be sharing the expense of cleanup"; the Court concluded that "[a] voter perusing the summary could well be misled on this material point").
Non-Education-Related Taxes
The ballot title clearly states that proposed Amendment 5 addresses school property taxes and, through limitation, distinctly implies only school property taxes. However, proposed Amendment 5 would also amend portions of the Florida Constitution that do not address school property taxes. This proposed Amendment 5 would reduce from ten percent to five percent the amount that "all levies other than school district levies" may exceed the assessment from the prior year. Although the summary does state that proposed Amendment 5 "[l]imit[s] annual increases in assessment of non-homestead real property," this Court has held that "the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters." Advisory Opinion to the Attorney Gen. re Fla.'s Amendment to Reduce Class Size, 816 So.2d 580, 585 (Fla. 2002). The specific reference to school property taxes in the title would reasonably lead voters to believe that the maximum increases in "assessment of non-homestead real property," referenced in the summary are limited to school property taxes.
We have consistently followed principles parallel to those of statutory interpretation when reviewing issues related to constitutional provisions. See Coastal Fla. Police Benev. Ass'n v. Williams, 838 So.2d 543, 548 (Fla.2003). This Court noted in an early case, which addressed the title of a statute:
If the title of a statute be a restrictive one, carving out for consideration a part only of a general subject, matters not germane to or properly connected with that part of the general subject so singled *149 out, as reasonably and fairly understood, cannot be validly incorporated in the act. All provisions beyond such limits are invalid, even though such matters might have been incorporated in the act under a broader title, because as to such unrelated matters the title is misleading.

State v. Sullivan, 99 Fla. 1070, 128 So. 478, 480 (1930) (emphasis supplied). Despite the assertions of the State and Vote Yes to the contrary, we conclude that this principle of law is equally, if not more, applicable to ballot titles for proposed constitutional amendments. The text of the constitutional amendment will not be present in the voting booth; rather, the ballot title and summary will be the only information that is available to voters. For this reason, accuracy of the title and summary is "of paramount importance." Armstrong, 773 So.2d at 13 (voter approval of a constitutional amendment that is inaccurately represented on the ballot is a nullity).
The summary is misleading as to a primary effect of Amendment 5 because the proposed amendment impacts more than just school property taxes. Voters who support the elimination of such taxes might reconsider voting for Amendment 5 if they were informed by the ballot title and summary that the amendment also limits increases in annual assessments of non-school funds (such as funds assessed for police protection and emergency services). However, the actual ballot title and summary, when read together, do not clearly and unambiguously disclose this significant and distinct effect of proposed Amendment 5. Therefore, voters would likely be misled or confused with regard to the actual impact of proposed Amendment 5. See generally People Against Tax Revenue Mismanagement v. County of Leon, 583 So.2d 1373, 1376 (Fla.1991) (ballot language defective where "the proposal itself failed to specify exactly what was being changed, thereby confusing voters").

CONCLUSION
In recent years, advantageous but misleading "wordsmithing" has been employed in the crafting of ballot titles and summaries. Sponsors attempt to use phrases and wording techniques in an attempt to persuade voters to vote in favor of the proposal. When such wording selections render a ballot title and summary deceptive or misleading to voters, the law requires that such proposal be removed from the ballot  regardless of the substantive merit of the proposed changes. Indeed, the use or omission of words and phrases by sponsors, which become misleading, in an attempt to enhance the chance of passage, may actually cause the demise of proposed changes that might otherwise be of substantive merit. If a sponsor  whether it be a citizen-initiative group, commission, or otherwise  wishes to guard a proposed amendment from such a fate, it need only draft a ballot title and summary that is straightforward, direct, accurate and does not fail to disclose significant effects of the amendment merely because they may not be perceived by some voters as advantageous. The voters of Florida deserve nothing less than clarity when faced with the decision of whether to amend our state constitution, for it is the foundational document that embodies the fundamental principles through which organized government functions.
We hold that the trial court was correct and the ballot title and summary for proposed Amendment 5 are misleading and do not comply with section 101.161. Accordingly, we affirm the order of the trial court which entered a summary final judgment in favor of Slough and directed that proposed *150 Amendment 5 be removed from the November 2008 general election ballot.
NOTES
[1] The resolution was published in the final report of the Commission with regard to this proposed amendment. The reports for each of the proposed amendments are published on the Commission's website. See Florida Taxation & Budget Commission, Reports, http://www.floridatbrc.org/reports08.php.
[2] Vote Yes was granted leave to intervene as a defendant "on the condition that its status is subordinate to that of the initial parties."
[3] The proposed amendment to article VII, section 4 provides, in relevant part (added material is underlined and deleted material is stricken):

(f) For all levies other than school district levies, assessments of residential real property, as defined by general law ... shall change only as provided in this subsection.
(1) Assessments subject to this subsection shall be changed annually on the date of assessment provided by law; but those changes in assessments shall not exceed five ten percent (5%) (10%) of the assessment for the prior year.
....
(g) For all levies other than school district levies, assessments of real property that is not subject to the assessment limitations set forth in subsections (a) through (c) and (f) shall change only as provided in this subsection.
(1) Assessments subject to this subsection shall be changed annually on the date of assessment provided by law; but those changes in assessments shall not exceed five ten percent (5%) (10%) of the assessment for the prior year.