992 So.2d 132 (2008)
Andy FORD, et al., Appellants,
v.
Kurt BROWNING, etc., et al., Appellees.
No. SC08-1529.
Supreme Court of Florida.
September 15, 2008.
*134 Ronald G. Meyer and Jennifer S. Blohm of Meyer and Brooks, P.A., Tallahassee, FL; Robert H. Chanin, National Education Association, Washington, D.C.; John M. West and Daniel A. Zibel of Bredhoff and Kaiser, PLLC, Washington, D.C.; Pamela L. Cooper, Florida Education Association, *135 Tallahassee, FL; Judith E. Schaeffer, People For the American Way Foundation, Washington, D.C.; Ayesha N. Khan, Americans United for Separation of Church and State, Washington, D.C.; Joy Causseaux Frank, Florida Association of District School Superintendents, Inc., Tallahassee, FL; Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL; David L. Barkey, Anti-Defamation League, Boca Raton, FL; and Jeffrey Philip Sinensky, American Jewish Committee, New York, NY, for Appellants.
Bill McCollum, Attorney General, Scott D. Makar, Solicitor General, Louis F. Hubener, Chief Deputy Solicitor General, and Timothy D. Osterhaus and Courtney Brewer, Deputy Solicitors General, and Blaine H. Winship, Assistant Attorney General, Tallahassee, FL, and Lynn C. Hearn, General Counsel, Department of State, Tallahassee, FL, for Appellees.
Stephen H. Grimes and Nathan A. Adams, IV of Holland and Knight, Tallahassee, FL, on behalf of Florida Catholic Conference, Inc., Mercy Hospital, Inc., Friends of Lubavitch of Florida, Inc., Catholic Charities of the Archdiocese of Miami, Inc., and Association of Christian Schools International; and Daniel J. Woodring of Woodring Law Firm, Tallahassee, FL, on behalf of Taxation and Budget Reform Commission Chair Allan Bense and other members, as Intervenor Respondents.
Joseph W. Little, Gainesville, FL, on behalf of Eileen F. Roy, Susan W. Bottcher, David E. Jones, Hanna Peterson and David M. Chalmers, Citizens and Taxpayers of Florida, as Amicus Curiae.
WELLS, J.
Appellants filed a complaint in the Circuit Court of the Second Judicial Circuit for Leon County, challenging two proposed constitutional amendments submitted by the Taxation and Budget Reform Commission (TBRC) on the ground that TBRC does not have the authority to propose constitutional revisions on these subjects. The first constitutional proposal would amend the freedom of religion provision found in article I, section 3 of the Florida Constitution by eliminating the restriction on state funds being used in aid of any religion and adding a provision that an individual or entity cannot be barred from participating in a public program based on religion. The second constitutional proposal would amend the public education provision found in article IX, section 1, by directing school districts to spend at least sixty-five percent of their funding on classroom instruction and providing that the duty to provide for public education is not exclusively limited to free public schools. The appellants further alleged in their complaint that the ballot title and summary language accompanying one of the proposals did not accurately inform voters as to the true effect of the proposed amendment. They sought an injunction barring the Secretary of State from placing Proposed Amendments 7 and 9 on the ballot for the November 2008 general election.[1] Appellants filed a motion for temporary *136 injunction, which was treated as a motion for final summary judgment. Following briefing and oral argument, the circuit court denied the appellants' motion for summary judgment and granted the cross-motions filed by the appellees and the intervenors, finding that TBRC had the authority to propose the amendments and that the challenged ballot title and summary were not misleading. Appellants appealed the judgment to the First District Court of Appeal, which certified to this Court that this case presents a question of great public importance requiring immediate resolution by this Court in light of the upcoming election. We have jurisdiction under article V, section 3(b)(5), of the Florida Constitution.

ANALYSIS
As an initial matter, it is important to stress that the wisdom or merits of the proposed amendments are not issues before the Court. See Advisory Op. to the Att'y Gen. re Fla. Marriage Protection Amendment, 926 So.2d 1229, 1233 (Fla. 2006). Rather, the question before the Court is to determine the extent of the authority provided to TBRC by article XI, section 6(e) of the Florida Constitution to propose constitutional amendments and whether the authority extends to Proposed Amendments 7 and 9. Our standard of review is de novo. See Zingale v. Powell, 885 So.2d 277, 280 (Fla.2004) ("[C]onstitutional interpretation, like statutory interpretation, is performed de novo.").
When reviewing constitutional provisions, this Court "follows principles parallel to those of statutory interpretation." Zingale, 885 So.2d at 282. Any question regarding the meaning of a constitutional provision must begin with examining that provision's explicit language. See Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986). If the constitutional language is clear, unambiguous, and addresses the matter at issue, it must be enforced as written, and courts do not turn to rules of constitutional construction. Id. If the explicit language is ambiguous or does not address the exact issue before the court, the court must endeavor to construe the constitutional provision in a manner consistent with the intent of the framers and the voters. Crist v. Fla. Ass'n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 140 (Fla.2008). As this Court has held:
The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.
Id. (quoting Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 501 (Fla.2003)) (emphasis omitted). A constitutional provision should be "construed as a whole in order to ascertain the general purpose and meaning of each part; each subsection, sentence, and clause must be read in light *137 of the others to form a congruous whole so as not to render any language superfluous." Dep't of Envtl. Prot. v. Millender, 666 So.2d 882, 886 (Fla.1996).
With these principles in mind, we turn to the language involved in the constitutional provision at issue. TBRC was created in 1988 via article XI, section 6, of the Florida Constitution. Subsection 6(d) sets forth TBRC's power to review and study matters; and subsection 6(e) sets forth TBRC's authority to act. Specifically, article XI, section 6(d)-(e), states as follows:
(d) The commission shall examine the state budgetary process, the revenue needs and expenditure processes of the state, the appropriateness of the tax structure of the state, and governmental productivity and efficiency; review policy as it relates to the ability of state and local government to tax and adequately fund governmental operations and capital facilities required to meet the state's needs during the next twenty year period; determine methods favored by the citizens of the state to fund the needs of the state, including alternative methods for raising sufficient revenues for the needs of the state; determine measures that could be instituted to effectively gather funds from existing tax sources; examine constitutional limitations on taxation and expenditures at the state and local level; and review the state's comprehensive planning, budgeting and needs assessment processes to determine whether the resulting information adequately supports a strategic decisionmaking process.
(e) The commission shall hold public hearings as it deems necessary to carry out its responsibilities under this section. The commission shall issue a report of the results of the review carried out, and propose to the legislature any recommended statutory changes related to the taxation or budgetary laws of the state. Not later than one hundred eighty days prior to the general election in the second year following the year in which the commission is established, the commission shall file with the custodian of state records its proposal, if any, of a revision of this constitution or any part of it dealing with taxation or the state budgetary process.

Art. XI, § 6(d)-(e), Fla. Const. (emphasis added).
The question to be resolved is the meaning of the limitation of TBRC's authority to propose constitutional amendments where that authority is limited to dealing with taxation or the state budgetary process. According to the appellees, TBRC's authority to propose constitutional revisions under subsection 6(e) must be read in conjunction with its powers to review and study matters under subsection 6(d). In support, the appellees point out that under section 6(d), TBRC is directed to "examine constitutional limitations on taxation and expenditures at the state and local level" and allege that it would be illogical for TBRC to examine this issue if it does not have the power to propose constitutional revisions to the voters in respect to both taxation and expenditures. The appellees do not contend that these proposed amendments deal with taxation, but according to the appellees, construing subsections 6(d) and 6(e) together, TBRC has the power to propose constitutional amendments regarding state revenue expenditures because expenditures are encompassed within the state budgetary process. The circuit court agreed and entered its judgment for the appellees.
We disagree. We find the appellees' and the circuit court's construction of section 6(e) to be contrary to the plain and unambiguous language of the constitutional provision. While we recognize that subsection *138 6(d) sets forth numerous subjects for TBRC to review and study, including "the state budgetary process, the revenue needs and expenditure processes of the state, the appropriateness of the tax structure of the state, and governmental productivity and efficiency," see art. XI, § 6(d), Fla. Const. (emphasis added), we do not conclude that subsection 6(d) can be construed to authorize TBRC to propose constitutional amendments on these subjects. Rather, based on the review authorized by subsection 6(d), subsection 6(e) sets forth four duties that TBRC is authorized to perform: (1) holding public hearings as necessary; (2) issuing a report relative to results of its review; (3) proposing to the Legislature "recommended statutory changes related to the taxation or budgetary laws of the state"; and (4) filing proposed constitutional revisions "dealing with taxation or the state budgetary process." Art. XI, § 6(e), Fla. Const. (emphasis added). The review and study mandated by section 6(d) are for use in performing these four distinct duties.
In construing the authority given to the Commission in respect to its duties, it is important to recognize that subsection 6(e) expressly draws a distinction between TBRC's authority to propose to the Legislature recommendations of statutory changes related to "taxation or budgetary laws," which could include budgetary expenditures, and TBRC's authority to propose constitutional amendments, which is limited to dealing with "the state budgetary process." It is likewise important to note that subsection 6(e) does not use the phrase "deal with taxation or the state budget." We find that the phrase "the state budgetary process" has a meaning distinct from "budgetary laws of the state" and from "state budget." We construe "state budgetary process" to mean the process by which the state budget is developed. Our rules of construction require us to give all words their plain meaning. Fla. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering v. Inv. Corp. of Palm Beach, 747 So.2d 374, 382 (Fla.1999) ("This Court consistently has adhered to the plain meaning rule in applying statutory and constitutional provisions.").
If this Court were to accept the appellee's view that the term "state budgetary process" includes any matter that addresses either raising revenue or any State expenditure, this definition would read out the word "process." The ordinary meaning of the word "process" is "a series of actions or operations conducing to an end." Merriam Webster's Collegiate Dictionary 929 (10th ed.1994). As this term is applied to "state budgetary process," it means the series of steps and actions that are necessary to producing a budget for the state. In other words, as the appellants suggest, it refers to "the structural and procedural aspects of developing and implementing the state budget." Additionally, if we were to accept the appellees' view that "state budgetary process" includes any matter that either raises revenue or involves any state expenditure, it would also render the term "taxation" superfluous since taxation is the raising of revenue.
We conclude that this construction is also consistent with TBRC's rule 1.005 (Functions and Duties), which provides in pertinent part:
The "state budgetary process" means the manner in which every level of government in the state expends funds, incurs debt, assesses needs, acquires financial information, and administers its fiscal affairs, and includes the legislative appropriation process and the budgetary practices and principles of all agencies and subdivisions of the state involved in *139 financial planning, determining, implementing, administering, and reviewing governmental programs and services.
See TBRC Rule 1.005 (2008) (emphasis added). The phrase "the manner in which" modifies the rest of TBRC's own definition of the term.
This plain meaning definition is also consistent with how "state budgeting process" is used in article III, section 19 of the Florida Constitution (entitled "State Budgeting, Planning and Appropriations Processes"), and Chapter 216, Florida Statutes, which sets forth various planning and budgeting processes. Article III, section 19, sets forth a detailed process whereby the State can ensure better fiscal responsibility, including provisions that: (a) direct an annual budget and planning process; (b) provide for the format for appropriations bills; (c) require agencies to submit planning documents and budget requests for legislative review; (d) mandate a seventy-two-hour public review period for appropriations bills; (e) require a final budget report; (f) impose further regulations on the creation of trust funds; and (g) direct the creation of a reserve fund to be used for revenue shortfalls and emergencies, among numerous other provisions. Pursuant to article III, section 19(a), which provides that "[g]eneral law shall prescribe the adoption of annual state budgetary ... processes," the Legislature set out the general state budget process in chapter 216 of the Florida Statutes. Perusal of the detailed provisions of both article III, section 19, and chapter 216 of the statutes makes clear that the phrase "budgetary process" refers to the structural and procedural aspects of budget development. For example, section 216.015(3) sets forth the capital facilities planning and budgeting process and provides that "the process" includes:
(a) An inventory of current facilities owned, leased, rented, or otherwise occupied by any agency of the state or the judicial branch;
(b) An assessment of current population, economic, social, physical, and environmental trends and conditions that relate to public facilities;
(c) A determination of future demographic conditions deemed most appropriate and likely for this state and of a set of goals and objectives;
(d) A determination of unmet needs by comparing existing facilities to goals and objectives;
(e) A strategic matching of funding options and facility needs to ensure the most effective development strategy; and
(f) A management structure that maintains, operates, repairs, renovates, and replaces capital facilities to obtain the maximum value for each public dollar spent.
§ 216.015(3), Fla. Stat. (2007).
TBRC is a constitutional body that has only those powers which were specifically designated to it. If certain powers are not explicitly provided to the Commission, this Court cannot add to the constitutional limitations by expanding its authority beyond the provisions stated. See Southern Armored Serv., Inc. v. Mason, 167 So.2d 848, 850 (Fla.1964) (holding that a commission is a body with special and limited power and "[i]t can only exercise the power expressly or impliedly granted to it and any reasonable doubt of existence of any power must be resolved against the exercise thereof").
We find that the plain reading of the term "state budgetary process" is clear and unambiguous  TBRC's jurisdiction to propose constitutional amendments does not extend to a subject solely because *140 the State will expend funds on that subject or because it could affect the State's expenditures. TBRC's authority to propose constitutional amendments directly to the voters is constitutionally limited to two scenarios: if the proposal addresses taxation or the process by which the State's budget is procedurally composed and considered by the Legislature. This interpretation does not render the Commission powerless. In fact, providing TBRC with the authority to propose constitutional amendments addressing taxation alone is a significant ability, in addition to its authority to directly propose constitutional amendments relating to the state budgetary process. Furthermore, TBRC has the authority to issue a report addressing any of its findings, including recommendations that the constitution be revised relative to expenditure issues and to recommend that the Legislature make statutory changes related to the taxation or budgetary laws of the state, which could include budgetary expenditures.
In the first challenged proposed amendment, Amendment 7 would amend article I, section 3, of the Florida Constitution, as follows:
SECTION 3. Religious freedom.  There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. An individual or entity may not be barred from participating in any public program because of religion. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
(New language is indicated by underlining, and deleted language is struck through.) This proposal clearly does not address taxation or the state budgetary process as we have construed that provision.
In the next proposal, Amendment 9 would modify article IX, regarding education, by modifying article IX, section 1(a) to state as follows:
SECTION 1: Public funding of education. 
(a) The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. This duty shall be fulfilled, at a minimum and not exclusively, through adequate Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require. Nothing in this subsection creates an entitlement to a publicly-financed private program.
Proposed Amendment 9 would also add a new section 8 to article IX:
SECTION 8. Requiring sixty-five percent of school funding for classroom instruction.  At least sixty-five percent of the school funding received by school districts shall be spent on classroom instruction, rather than on administration. Classroom instruction and administration shall be defined by law. The legislature may also address differences in administrative expenditures by district for necessary services, such as transportation and food services. Funds for capital outlay shall not be included in the calculation required by this section.
*141 Again, the appellees assert that TBRC has the authority to propose this constitutional amendment because it addresses a constitutional limitation on expenditures and is thus part of the state budgetary process since expenditures are a part of the process. For the reasons addressed above, as this amendment involves merely specific expenditures and not the budgetary process, we hold that TBRC exceeded its constitutional authority in proposing Amendment 9.

CONCLUSION
For the reasons set forth above, we conclude that the Taxation and Budget Reform Commission exceeded its authority in proposing these two amendments. Accordingly, we reverse the final judgment entered by the circuit court. The Secretary of State and all persons and entities acting under his direction are hereby enjoined from placing proposed Amendments 7 and 9 on the November 2008 general election ballot. We direct that no later than September 4, 2008, the trial court enter final judgment for appellants. No motion for rehearing will be entertained.
It is so ordered.
QUINCE, C.J., ANSTEAD, PARIENTE, LEWIS, and BELL, JJ., and CANTERO, Senior Justice, concur.
LEWIS, J., concurs with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
LEWIS, J., concurring.
I fully concur in the decision of the majority that TBRC lacked the authority to propose Amendments 7 and 9. I write separately to emphasize that, even if TBRC possessed the authority, proposed Amendment 9 is defective and would have been removed from the 2008 November general election ballot because of its misleading title. Section 101.161(1), Florida Statutes (2007), which governs the statutory requirements for ballot titles and summaries for constitutional amendments, states:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.
(Emphasis supplied.)
As noted by the majority, the ballot title of Amendment 9 provides:
REQUIRING 65 PERCENT OF SCHOOL FUNDING FOR CLASSROOM INSTRUCTION; STATE'S DUTY FOR CHILDREN'S EDUCATION
This limited, narrow title clearly implies that Amendment 9 solely addresses the percentage of school funding which must be allocated to classroom instruction. The title completely fails to mention that proposed Amendment 9 eliminates existing Florida law that a statutory "voucher program" is contrary to the constitutionally-required "uniform, efficient, safe, secure, and high quality system of free public schools." Art. IX, § 1(a), Fla. Const.; see Bush v. Holmes, 919 So.2d 392, 412-13 (Fla.2006) (holding that statutorily created Opportunity Scholarship Program failed to comply with article IX, section 1(a) of the Florida Constitution). I recognize that the ballot summary mentions this effect of the proposed amendment. However, a limited, restrictive title which touts one effect of a proposed amendment, but totally fails to mention a very significant effect of that amendment, is inherently misleading. Voters who read the ballot title would be misinformed with regard to the full scope of proposed Amendment 9.
The complete failure to mention in the ballot title of proposed Amendment 9 the *142 significant change it would produce in Florida law is not a matter of statutory word limits, nor is it a matter of creating a simple title by which the proposed Amendment shall be known. The highlighting of one significant change implemented by a proposed amendment in the ballot title, but to omit the second, equally or more significant change  by total omission from the title and, instead, relegating its sole reference to the last sentence in the ballot summary  constitutes nothing more than word play in an attempt to achieve passage of the proposed amendment. This is a classic example of "hiding the ball."
The proposed amendment might have significant importance and merit, but the citizens and voters of Florida must have clear notice through both the title and summary. The approach presented in this proposed amendment is to combine two or more separate, distinct, and unrelated matters under a title of only one of those changes  a title which may have significant merit and popular support. This type of title and summary design causes a proposal to mislead, "fly under false colors," and "hide the ball," contrary to well-established Florida law that requires a proposed amendment to be clearly and accurately reflected on the ballot. See Fla. Dep't of Rev. v. Slough, No. SC08-1569, 992 So.2d 142, 146-47, 2008 WL 4191801, slip op. at 7-8 (Fla. Sept. 15, 2008); Armstrong v. Harris, 773 So.2d 7, 12-13 (Fla.2000).
The voters of Florida should not be subject to sleight-of-hand word games when they enter the voting booth. Rather, the title of a proposed amendment to the Florida Constitution should fairly apprise voters with regard to a proposed amendment. If this cannot be accomplished within the statutory limit, a more general title should be drafted which would draw the voters to the summary to understand the major impacts of a proposed amendment. These options would produce a ballot title and summary that would not be misleading. However, the use of a highly specific title, which completely fails to mention a very major and significant aspect of the amendment, causes a proposal to violate the statutory requirements of section 101.161. See Slough, No. SC08-1569 at 11-13, 992 So.2d at 148-49.
Florida law requires the use of straightforward and direct language in a ballot title and summary, not creative "wordsmithing" in an attempt to ensure passage.
ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The ballot title and summary for Proposed Amendment 7 state:

RELIGIOUS FREEDOM
Proposing an amendment to the State Constitution to provide that an individual or entity may not be barred from participating in any public program because of religion and to delete the prohibition against using revenues from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
The ballot title and summary for Proposed Amendment 9 state:
REQUIRING 65 PERCENT OF SCHOOL FUNDING FOR CLASSROOM INSTRUCTION; STATE'S DUTY FOR CHILDREN'S EDUCATION
Requires at least 65 percent of school funding received by school districts be spent on classroom instruction, rather than administration; allows for differences in administrative expenditures by district. Provides the constitutional requirement for the state to provide a "uniform, efficient, safe, secure, and high quality system of free public schools" is a minimum, nonexclusive duty. Reverses legal precedent prohibiting public funding of private school alternatives to public school programs without creating an entitlement.