[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 279 
In this case, we construe article VII, section 4(c) of the Florida Constitution, known as the "Save Our Homes" amendment, which limits the annual change in property tax assessments on homestead exempt property to three percent of the previous assessment or the change in the Consumer Price Index, whichever is less. We must decide whether a homeowner qualifies for the provision's limit on increases in property tax assessments immediately upon meeting the ownership and residency requirements for a homestead exemption, or instead only upon being granted the homestead exemption. We conclude that the cap is tied to the grant of a homestead exemption, and therefore quash the decision below, in which the Fourth District Court of Appeal reached a contrary conclusion. See Powell v. Markham, 847 So.2d 1105, 1106 (Fla. 4th DCA 2003).[1]
 I. FACTS AND PROCEDURAL HISTORY
Robert and Ann Powell purchased a home in Fort Lauderdale in 1990. They *Page 280 
have continuously used the home as their primary residence since its purchase, but did not apply for a homestead exemption until September 2001, after the Broward County Property Appraiser notified them of an increase of almost $40,000 in their ad valorem property taxes. The steep rise in the Powells' property taxes resulted from a correspondingly large increase in the assessed value of their home, from $2.3 million to almost $3.9 million. In addition to filing for a homestead exemption in 2001, the Powells also sought to have the Save Our Homes cap applied to limit the increase in their assessment from 2000 to 2001. Their homestead exemption application was approved for 2001, but the property appraiser did not reduce the 2001 assessment to the limits of the Save Our Homes cap for that year. The Powells subsequently filed suit to challenge Broward County's refusal to apply the Save Our Homes cap to the increase in the assessed value of their home from 2000 to 2001.[2] The trial court granted judgment on the pleadings in favor of the defendants. The trial court concluded that "[b]ecause the Powells' property did not `receive' the Homestead Exemption until 2001, that is their base year, one year after which commences their entitlement to the assessment limitations of the Constitution." The Powells appealed.
The Fourth District reversed the trial court order, concluding that the cap applied to homeowners who qualified for the exemption, not just to those who applied for it. Therefore, the Fourth District held that the cap applied to the increase in the assessed value of the Powells' home from 2000 to 2001. See Powell, 847 So.2d at 1106-07. In dissent, Judge Stone concluded that because the Powells had not timely applied for a homestead exemption for 2000, they were not entitled to application of the cap on increases in value based on an assessment for 2000. See id. at 1107 (Stone, J., dissenting). Zingale, Executive Director of the State Department of Revenue, seeks review of the Fourth District's decision.
 II. ANALYSIS
Like the Fourth District before us, we must determine the meaning of the language in article VII, section 4(c) of the Florida Constitution. This provision took its place in the Florida Constitution after the voters of this State approved a citizens' initiative on November 3, 1992.[3] Although we take into consideration the district court's analysis on the issue, constitutional interpretation, like statutory interpretation, is performed de novo. Cf. BellSouth Telecomm., Inc. v.Meeks, 863 So.2d 287, 289 (Fla. 2003) ("Statutory interpretation is a question of law subject to de novo review.")
Article VII, section 4(c) provides:
 (c) All persons entitled to a homestead exemption under Section 6 of this Article shall have their homestead assessed at just value as of January 1 of the year following the effective date of this *Page 281 
amendment. This assessment shall change only as provided herein.
 (1) Assessments subject to this provision shall be changed annually on January 1st of each year; but those changes in assessments shall not exceed the lower of the following:
 a. Three percent (3%) of the assessment for the prior year.
 b. The percent change in the Consumer Price Index for all urban consumers, U.S. City Average, all items 1967=100, or successor reports for the preceding calendar year as initially reported by the United States Department of Labor, Bureau of Labor Statistics.
(2) No assessment shall exceed just value.
 (3) After any change of ownership, as provided by general law, homestead property shall be assessed at just value as of January 1 of the following year. Thereafter, the homestead shall be assessed as provided herein.
 (4) New homestead property shall be assessed at just value as of January 1st of the year following the establishment of the homestead. That assessment shall only change as provided herein.
 (5) Changes, additions, reductions, or improvements to homestead property shall be assessed as provided for by general law; provided, however, after the adjustment for any change, addition, reduction, or improvement, the property shall be assessed as provided herein.
 (6) In the event of a termination of homestead status, the property shall be assessed as provided by general law.
 (7) The provisions of this amendment are severable. If any of the provisions of this amendment shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any remaining provisions of this amendment.
Article VII, section 6, which is referred to in subsection 4(c), provides in pertinent part:
 (a) Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars, upon establishment of right thereto in the manner prescribed by law.[4]
Both constitutional provisions reduce the tax burden on homestead property. The First District Court of Appeal has succinctly stated:
 The purpose of the amendment is to encourage the preservation of homestead property in the face of ever increasing opportunities for real estate development, and rising property values and assessments. The amendment supports the public policy of this state favoring preservation of homesteads. Similar policy considerations are the basis for the constitutional provisions relating to homestead tax exemption (Article VII, Section 6, Florida Constitution), exemption from forced sale (Article X, Section 4(a), Florida Constitution), and the inheritance and alienation of homestead (Article X, Section 4(c), Florida Constitution).
Smith v. Welton, 710 So.2d 135, 137 (Fla. 1st DCA 1998) (footnote omitted); see also Op. Att'y Gen. Fla. 02-28 (2002). *Page 282 
Zingale and the county property appraisers appearing as amici in this case assert that a homeowner's entitlement to the benefits of the cap in article VII, section 4(c) is dependent upon establishing the right to a homestead exemption under article VII, section 6 "in the manner prescribed by law," i.e., by timely application for a homestead exemption. In Horne v. Markham, 288 So.2d 196, 199 (Fla. 1973), this Court held that article VII, section 6 does not create an absolute right to a homestead exemption but instead requires that taxpayers establish the right thereto by following the procedures required by law. As stated in Horne and still the case today, these procedures include a timely application under chapter 196, Florida Statutes. Zingale and his amici claim that without a requirement that a homeowner obtain a homestead exemption to qualify for the cap, the property appraiser cannot ascertain whether property is in fact homestead property and thus eligible for the limit on the increase in the assessed value of the homestead property.
The Powells contend that a homeowner becomes entitled to the benefits of the cap upon meeting the ownership and eligibility requirements for homestead status, and that article VII, section 4(c) does not require that the property be granted a homestead exemption in order to trigger the cap's protection. They maintain that the requirements in article VII, section 6 for establishing a homestead exemption do not apply to obtaining the benefit of the cap in article VII, section 4(c). They also assert that subsection 4(c)(4) supports this construction because it requires an assessment of new homestead property at just value for the "year following the establishment of the homestead," rather than the year following the establishment of the homestead exemption. Thus, according to the Powells, they are entitled to the benefits of the cap based upon demonstrating their eligibility to receive the homestead exemption rather than upon demonstrating that they have received the homestead exemption. However, Zingale asserts that "establishment of the homestead" in subsection 4(c)(4) in fact means successfully applying for the homestead exemption.
Our task in this case of constitutional interpretation follows principles parallel to those of statutory interpretation. See CoastalFla. Police Benev. Ass'n v. Williams, 838 So.2d 543, 548 (Fla. 2003) ("The rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions."). In a recent case concerning construction of another constitutional provision enacted by referendum on a ballot initiative, we explained the principles to be applied when interpreting constitutional provisions:
 We agree with the petitioners that "[a]ny inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language." Florida Society of Ophthalmology v. Florida Optometric Assn., 489 So.2d 1118, 1119 (Fla. 1986). Likewise, this Court endeavors to construe a constitutional provision consistent with the intent of the framers and the voters. In Gray v. Bryant, 125 So.2d 846, 852 (Fla. 1960), this Court stated:
 The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied. *Page 283 
 (Emphasis added.) Moreover, in construing multiple constitutional provisions addressing a similar subject, the provisions "must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision." Advisory Opinion to the Governor — 1996 Amendment 5 (Everglades), 706 So.2d 278, 281 (Fla. 1997).
Caribbean Conservation Corp. v. Florida Fish Wildlife ConservationComm'n, 838 So.2d 492, 501 (Fla. 2003) (footnote omitted).
We thus begin with the actual language used. The first paragraph of subsection 4(c) provides that "[a]ll persons entitled to a homesteadexemption . . . shall have their homestead assessed at just value as of January 1 of the year following the effective date of this amendment." (Emphasis supplied.) In its decision below, the Fourth District, focusing on the word "entitled," concluded that persons who owned property eligible for a homestead exemption should receive the benefit of the cap. See Powell, 847 So.2d at 1106-07. The majority rejected Judge Stone's dissenting view that a timely application for a homestead exemption was necessary to establish entitlement to the benefits of the cap, concluding that the Powells were seeking the assessment cap, rather than a homestead exemption, for the year 2000. See id. at 1107.
We conclude that the Fourth District's focus on the word "entitled" in the first paragraph of subsection 4(c) is misplaced. Under the plain language of this provision, the entitlement to a baseline just value assessment applies solely to the initial assessment required by the provision. We have already determined that the initial year for the baseline assessment was January 1, 1994. See Fuchs v. Wilkinson,630 So.2d 1044, 1045-46 (Fla. 1994) ("[F]rom the plain reading of the amendment, January 1, 1994 (the year following the effective date of the amendment), is the date homestead property is to be `assessed at just value.'"). Thus, the provision that the Powells and the Fourth District rely on is not applicable to them because they did not seek to invoke the baseline assessment of January 1, 1994. In fact, the Powells do not contend that January 1, 1994 is the date for the baseline assessment but rather claim that date as January 1, 2000, more than a year before they applied for a homestead exemption.
The Fourth District's resolution of the issue is also contrary to the implementing legislation for article VII, section 4(c). Section 193.155, Florida Statutes (2001), provides:
 Homestead property shall be assessed at just value as of January 1, 1994. Property receiving the homestead exemption after January 1, 1994, shall be assessed at just value as of January 1 of the year in which the property receives the exemption.
Section 193.155(6) specifies that "[o]nly property that receives a homestead exemption is subject to this section." Therefore, under the implementing statute, the initial baseline assessment would be in 2001, the year in which the Powells obtained the homestead exemption. Because the first paragraph of article VII, section 4(c) applies only to the initial, January 1, 1994, assessment, we reject the Powells' suggestion that the reference in section 193.155 to property that receives the homestead exemption after January 1, 1994, places the statute in conflict with the constitutional provision.
In fact, section 193.155 is consistent with another provision of the cap, article VII, section 4(c)(4), which provides that "new homestead property shall be assessed at just value as of January 1st of the year following the establishment of *Page 284 
the homestead."[5] There is no definition in article VII, section 4(c) of "new homestead property"; however, since subsection 4(c)(3) deals with assessments following changes in ownership, it is logical to construe "new homestead property" as property newly receiving the homestead exemption, and "establishment of the homestead" as a successful application for the exemption independent of any ownership change. This construction would then allow homeowners who had not received a homestead exemption entitling them to the January 1, 1994, baseline assessment, or whose property did not previously qualify for an exemption, to obtain the baseline assessment upon receiving a homestead exemption.
This construction of the first paragraph of subsection 4(c), when considered in conjunction with the other provisions of article VII, section 4(c), allows every homeowner who receives a homestead exemption to receive the benefit of the cap with the only variation being when the baseline year is established. For those homeowners whose property had already received a homestead exemption under article VII, section 6 as of the effective date of the amendment, the baseline year pursuant to the first paragraph of subsection 4(c) would be January 1, 1994. For property in which ownership has changed, subsection 4(c)(3) provides that homestead property would be assessed at a baseline the year following the change of ownership. Lastly, subsection 4(c)(4) allows any homeowner who obtains a homestead exemption to have a baseline assessment in the year following the "establishment" of the homestead.
Conversely, if article VII, section 4(c)(4) is construed to mean that "new homestead property" is established when the ownership and residency requirements are met without regard to a successful homestead application, there is no identifiable starting point for the cap in the case of a homeowner who had not obtained a homestead exemption before January 1, 1994. The Powells assert that the January 1, 2000, assessment is their baseline, but their position appears to rest solely on the fact that they are challenging the increased assessment for 2001 rather than on the inherent operation of subsection 4(c). Their interpretation thus relies more on the timing of their assertion of the right to the cap than on the starting point for their legal entitlement thereto.
Construing the reference in subsection 4(c)(4) to "new homestead property" as property newly obtaining a homestead exemption is also consistent with article VII, section 6, which conditions the exemption "upon establishment of the right thereto in the manner prescribed by law." Horne, 288 So.2d at 199 (quoting art. VII, § 6, Fla. Const.). As Judge Stone observed below, section 196.011(1)(a), which implements the homestead exemption, requires a timely application, by March 1, to obtain the exemption for that year. The provision further specifies that failure to timely file results in waiver for that year. See Powell,847 So.2d at 1107 (Stone, J., dissenting).
Although subsection 4(c) establishes a constitutional right to receive the benefit of the cap on increases in valuation, *Page 285 
and section 6 establishes a constitutional right to an exemption of part of a property's value from taxation, both provisions are parts of a coordinated constitutional scheme relating to taxation and have as their underlying purpose the protection and preservation of homestead property.[6] Therefore, we conclude that subsection 4(c) and section 6 should be read in pari materia so that only those homeowners who have applied for and received the homestead exemption are entitled to the benefits of either constitutional provision. Under an in pari materia
construction, a successful application for a homestead application is necessary both to obtain the exemption and to qualify for the cap.
Additionally, this construction facilitates a logical, orderly scheme that is entirely consistent with the purpose of the amendment. Although taxpayers have a right to the constitutional cap, the right is not self-executing. Requiring a timely filing for a homestead exemption imposes only a slight burden on the taxpayer in comparison to the tax benefit received. At the same time, this requirement prevents substantial uncertainty in taxing authorities' annual taxing and budgeting process. By allowing only homeowners who have received a homestead exemption to qualify for the cap, property appraisers will be able to ascertain who is eligible for the benefits of the cap simply by checking the tax roll.[7]
Without this requirement, there would be no reliable way to determine which taxpayers might qualify for the cap. In this orderly scheme, taxing authorities drawing up annual budgets will also be able to rely on the list of properties for which there is a homestead exemption in determining the limits on tax revenue imposed by the cap, rather than having to ascertain which properties might be eligible if the property owner applied for the cap.
 III. CONCLUSION
Applied to the facts of this case, our conclusion that the grant of a homestead exemption is necessary for a homeowner to obtain the baseline assessment for the Save Our Homes cap in article VII, subsection 4(c) precludes the Powell's from benefiting from the cap for the increase in their property taxes from 2000 to 2001. Under subsection 4(c)(4), the Powells' successful application for the exemption in 2001 constituted an "establishment of the homestead," which triggered the baseline assessment for the Save Our Homes cap. Under section 193.155, their baseline year is 2001, and thereafter they will receive the benefits of the cap. Any change in their assessment from 2001 to 2002 and for *Page 286 
every year thereafter should be limited to the lesser of 3 percent or the change in the Consumer Price Index.
Accordingly, we quash the decision of the Fourth District and remand for proceedings consistent with this opinion.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
[1] We have jurisdiction to review any decision in which a district court expressly construes a provision of the state or federal constitution. See art. V, § 3(b)(3), Fla. Const. 
[2] Pursuant to the requirements for parties in a tax suit under section 194.181, Florida Statutes (2001), the Powells named as defendants William Markham, the Broward County Property Appraiser, Judith M. Fink, Director of the Broward County Revenue Collection Division, and James A. Zingale, Executive Director of the Florida Department of Revenue.
[3] The initiative was placed on the ballot pursuant to the provisions of article XI, section 3, Florida Constitution, for constitutional amendments. The organization that drafted, circulated, and promoted the petition was named "Save Our Homes, Inc." See Florida League of Cities v.Smith, 607 So.2d 397, 400 n. 6 (Fla. 1992); In re Advisory Opinion toAttorney General — Homestead Valuation Limitation, 581 So.2d 586, 587
(Fla. 1991).
[4] Article VII, subsection 6(d) authorizes an increase of the homestead exemption to $25,000 for 1982 and subsequent years.
[5] Section 193.155(1) requires the baseline assessment as of January 1 of the year in which the property receives the exemption, while article IV, section 4(c)(4) requires the baseline assessment "as of January 1st of the year following the establishment of the homestead." In this case, Zingale acknowledges that the baseline assessment was on January 1, 2001, consistent with the statute, rather than January 1, 2002, the year following the grant of the homestead exemption. Therefore, we need not address the different baseline assessments in the constitutional provision and the statute.
[6] The link between article VII, sections 4 and 6 is demonstrated not only by the reference to section 6 in subsection 4(c), but also by subsection 6(d), which provides that the increase in the homestead exemption "shall stand repealed on the effective date of any amendment to section 4 which provides for the assessment of homestead property at a specified percentage of its just value." Before the adoption of subsection 4(c), this Court held that the provision would not trigger the repealer in subsection 6(d). See Florida League of Cities, 607 So.2d at 401.
[7] The Powells assert that the twenty-five and thirty-day deadlines for administratively challenging assessments contained in section194.011(3)(d), Florida Statutes (2001), assure sufficient notice to property appraisers, and the sixty-day deadline in section 194.171(2), Florida Statutes (2001), for a civil complaint contesting the assessment provides notice of a legal challenge. However, the machinations of the administrative and legal systems are inefficient and costly substitutes for the simple expedient of an application for a homestead exemption. Further, when an assessment is challenged, the uncertainty over the tax obligation continues until the dispute is resolved.