# Supreme Court of Florida

No. SC2020-1479

**BILL FURST, etc., et al.,**
Petitioners,

vs.

**ROD REBHOLZ, etc., et al.,**
Respondents.

April 6, 2023

MUÑIZ, C.J.

This case is about the availability of the homestead tax exemption to a property owner who lives in one part of a residential structure but rents out another part for the exclusive use of a tenant. *See Furst v. Rebholz as Trustee of Rod Rebholz Revocable Trust,* 302 So. 3d 423 (Fla. 2d DCA 2020). We hold that the owner is not entitled to a homestead tax exemption on the rented portion, because that portion is not the owner's residence.[1]

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

## I.

The Florida Constitution governs homestead property in several distinct ways: protecting it from forced sale by creditors; restricting its alienation and devise; exempting it from certain ad valorem taxes; and imposing a 3% cap on annual assessment increases (through the Save Our Homes amendment). Art. X, § 4, Fla. Const.; art. VII, §§ 4(d)(1)a., 6(a), Fla. Const. This case involves the homestead tax exemption and the Save Our Homes assessment increase cap. Those provisions are intertwined, because the 3% assessment increase cap applies only to property that is entitled to a homestead tax exemption. Art. VII, § 4(d), Fla. Const.; *Zingale v. Powell*, 885 So. 2d 277, 284-85 (Fla. 2004).

The homestead tax exemption is set out in article VII, section 6(a) of the state constitution. In relevant part, it says: "Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, [up to specified amounts]." So there are two components to the homestead tax exemption: ownership and residency. Ownership is not contested in this case. Instead,

- 2 -

the parties' dispute turns on the residency requirement and its application. The question is how to determine the scope of a property owner's residence for purposes of the homestead tax exemption.

The property here is a two-story residential structure located in Sarasota. In the decisions below, both the trial court and the district court characterized the structure as a "single family" home. For the tax years 2004 through 2013, county tax officials treated the entire structure as homestead property, based on owner Rod Rebholz's initial homestead exemption application in 1996. Rebholz owned the property and lived in a portion of the structure at all relevant times. But it is undisputed that, for the entire time, Rebholz rented a portion of the structure to at least one tenant.

Rebholz lived on the bottom floor, which consisted of a kitchen, living area, and bathroom. The upper floor had a common laundry area and four individual rooms, each with its own living area and bathroom; some of the rooms had a kitchenette. Each room was lockable from the outside. The front door entry to the property had two doorbells, one for the bottom floor and the other for the top.

- 3 -

The record includes testimony from John Michael Beaumont, a tenant who rented one of the upstairs rooms without interruption from 1996 through the tax years at issue (2004 to 2013) and beyond. Beaumont learned of the property by reading an advertisement in the newspaper. A written rental agreement between Rebholz and Beaumont refers to the rate for Beaumont's "unit." In his testimony, Beaumont called his unit "my place, my room, my apartment." Beaumont referred to Rebholz as "my landlord." Beaumont also spoke of "other tenants" and estimated that, since 1996, eight to ten such persons had intermittently lived in other rooms upstairs.

In 2014, the Sarasota County property appraiser became aware that Rebholz might have received homestead benefits to which he was not entitled. An investigation revealed the configuration of the property and the rental situation just described. Eventually, the property appraiser revoked the homestead exemption on the 15% of the property that corresponded to Beaumont's unit, leaving intact the homestead exemption on the remaining 85% of the property. The property appraiser reasoned that, although Rebholz owned the entire structure and resided in

- 4 -

part of it, at least 15% of the property was not being used as Rebholz's residence.[2]

When a property appraiser determines that a person has improperly received a homestead tax exemption or Save Our Homes benefit, Florida law requires the property appraiser to impose the additional taxes that would have been due for up to the preceding ten years, plus a penalty and interest. §§ 196.161(1)(b), 193.155(10), Fla. Stat., (2014).[3] In Rebholz's case, the revocation of the homestead exemption as to 15% of the total property had the effect of removing the Save Our Homes benefit from that limited portion of Rebholz's property. The property appraiser therefore recalculated Rebholz's taxes for tax years 2004 through 2013, applying to the non-homestead portion a 10% annual assessment increase cap (instead of the 3% Save Our Homes cap). The result

---

2. The underlying complaint in this case and the subsequent court decisions did not address the 15% calculation or the methodology behind it, but rather the authority of the property appraiser to make this apportionment at all. Our decision is similarly limited in scope.

3. In this opinion, we will cite the Florida Statutes as they existed in 2014. Between 2003 and 2014, the statutory provisions cited in this opinion were not changed in ways material to this case.

- 5 -

was that Rebholz owed approximately $7,000 in back taxes, penalties, and interest. He paid the tax lien but then sued the property appraiser, the tax collector, and the state Department of Revenue for a refund and a reinstatement of homestead status to the entire property.[4]

After a bench trial, the circuit court entered judgment in Rebholz's favor. The court concluded that the entire structure should be considered Rebholz's residence, and it held that "[m]erely sharing the residence with a tenant does not create a classification of property not exempted." The court continued: "Florida law does not authorize the Property Appraiser to deny a homeowner his constitutional homestead exemption for a room rented within his residence while he simultaneously maintains the property as his permanent residence."

On appeal, a divided panel of the Second District Court of Appeal affirmed in relevant part. The district court echoed the trial

---

4. Rod Rebholz initiated this litigation but died on November 20, 2015. Donald Rebholz, as the successor trustee to the Rod Rebholz Revocable Trust, was substituted as the plaintiff and is the respondent in this case.

court, holding that "the property appraisers of this state are not authorized by law to carve up a homeowner's permanent residence in order to remove the protection provided by the constitutional homestead exemption when that person rents a bedroom or any other space within their home." *Furst*, 302 So. 3d at 434. The district court also held that Florida Administrative Code Rule 12D-7.013(5) is an invalid exercise of delegated legislative authority. *Id.* at 431. That rule says that "[p]roperty used as a residence and also used by the owner as a place of business does not lose its homestead character. The two uses should be separated with that portion used as a residence being granted the exemption and the remainder being taxed."

Judge Atkinson dissented in relevant part. He reasoned that Rebholz had apportioned his property into separate residences, and that Rebholz's own residence did not include the rented portion of the home. *Furst*, 302 So. 3d at 434-35 (Atkinson, J., concurring in result only in part and dissenting in part). Judge Atkinson summarized his view this way: "One cannot simultaneously reside in a residence and rent out that residence for another's exclusive use as a residence." *Id.* at 434.

In response to a petition from the property appraiser and the Department of Revenue, we accepted jurisdiction to review the district court's decision, which expressly affects property appraisers as a class of constitutional officers. *See* art. V, § 3(b)(3), Fla. Const.

## II.

The petitioners argue that the district court erred at the threshold by concluding that, for purposes of applying the homestead tax exemption, the entire structure was Rebholz's residence. We agree with the petitioners.

The Legislature has implemented the constitutional homestead tax exemption through section 196.031, Florida Statutes (2014), which Rebholz has not challenged. Subsection (1)(a) says that, when a property owner "in good faith" makes real property in this state his or a dependent's "permanent residence," the homestead tax exemption applies to "the residence and contiguous real property." § 196.031(1)(a), Fla. Stat. (2014). The Legislature has defined the term "permanent residence" to mean "that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning." § 196.012(17), Fla. Stat. (2014). Our

Court has observed that "most determinations regarding whether a permanent residence is being maintained on Florida property will involve some level of factual inquiry regarding the *actual use* of the residential property in question." *Garcia v. Andonie,* 101 So. 3d 339, 347 (Fla. 2012) (emphasis added).

A review of section 196.011, Florida Statutes (2014), confirms that residency is a use-based requirement. Subsection (1)(a) establishes an application requirement for tax exemptions that are based on property's "ownership and use." Subsection (9)(a) then shows that this category includes homestead exemptions. Specifically, subsection (9)(a) requires an updated application or notice "when the applicant for homestead exemption ceases to use the property as his or her homestead."

Now consider the part of the structure that Rebholz rented to Beaumont throughout the tax years at issue—the 15% that the property appraiser has designated as non-homestead property. Did Rebholz use that property as his residence? Surely not. The record leaves no doubt that Rebholz gave exclusive use of that portion to Beaumont, subject to Beaumont's compliance with the terms of their rental agreement. Contrary to the district court's

characterization, the property appraiser did not "divide" or "carve up" Rebholz's residence; instead, the property appraiser applied the statutory scheme to discern the scope of Rebholz's residence in the first instance. The disputed portion of the property was used as Beaumont's residence, not as Rebholz's. *Cf. Smith v. Guckenheimer*, 27 So. 900, 914 (Fla. 1900) ("How, then, are the exempted residence and business house to be recognized and distinguished? Only by their actual use as such by the party asserting the exemption thereof.").[5]

But the question remains: does Florida law allow the property appraiser to recognize this apportionment of Rebholz's property for homestead tax exemption purposes?[6] The district court said that the answer is no. That conclusion seemed driven by two things:

---

5. Before the adoption of our state's 1968 constitution, the homestead tax exemption for urban homesteads applied to the owner's "residence and business house." Art. IX, § 1, Fla. Const. (1868). The 1968 constitution removed homestead protection for the owner's "business house."

6. We recognize that cases involving homestead property's protection from forced sale may involve considerations (e.g., the physical divisibility of a given property) different from those present in the tax exemption context. Readers of this decision must keep that distinction in mind.

first, the district court's characterization of the property as a "single-family residential home," *Furst*, 302 So. 3d at 434 n.5; and second, the district court's belief that no provision of Florida law explicitly authorized the apportionment. In the district court's view, the property appraiser was asking the court to "read into the [governing] statute provisions that are not there." *Id.* at 429. We believe that the district court's holding on this question is wrong.

The most explicit authority for the property appraiser to apportion the property is found in section 196.031(4), Florida Statutes (2014). That provision says that the homestead exemption can apply to "the portion of property" that is classified and assessed as owner-occupied residential property. The district court's decision does not discuss this section, even though the property appraiser invoked it in the proceedings below.

More fundamentally, the property appraiser's authority is derived from his obligation to implement a constitutional and statutory scheme that makes residency a use-based requirement. Rebholz and the district court would allow a property's structure—and the labels used to describe the property—to dictate the application of the homestead tax exemption. The result would be to

make arbitrary distinctions between functionally similar homeowners and properties, without any constitutional or statutory basis for doing so.

In this case, for example, the label "single-family residence" does not reflect the true design and use of Rebholz's property. That property was effectively a boarding house, a part of which Rebholz lived in and used as his own residence. To limit the reach of its decision, the district court purported to distinguish Rebholz's property from "a multifamily apartment building of individual autonomous units." *Furst*, 302 So. 3d at 434 n.5. But assuming the property owner were to live in one of those apartment units, we fail to see a meaningful difference between that hypothetical property and Rebholz's. Beaumont—Rebholz's tenant—himself called his living area an apartment. The point is not to quibble over labels. Under the constitutional and statutory scheme, how an owner uses a property—not its physical structure or what it is called—dictates the availability of the homestead tax exemption.

## III.

We have considered Rebholz's arguments in support of the district court's decision, and we find them unpersuasive.

The parties and the courts below wrestled with whether and how section 196.012(13), Florida Statutes (2014), applies in this case. That provision defines the term "real estate used and owned as a homestead" for purposes of chapter 196. It says:

> (13) "Real estate used and owned as a homestead" means real property to the extent provided in s. 6(a), Art. VII of the State Constitution, but less any portion thereof used for commercial purposes . . . . Property rented for more than 6 months is presumed to be used for commercial purposes.

The trial court held that, to the extent the property appraiser had applied this provision in Rebholz's case, it was unconstitutional.

The district court reversed on that point, concluding that this definitional provision does not apply to Rebholz at all and therefore should not have been considered by the trial court. The district court noted that chapter 196 uses the defined term only in connection with 100% homestead exemptions for property owned and used by disabled veterans and other disabled persons. Those exemptions are codified in distinct provisions that are separate from

- 13 -

the generic homestead provisions applicable to Rebholz. *Furst,* 302 So. 3d at 429-30; §§ 196.091, 196.101, Fla. Stat. (2014).

We agree with the district court that this case does not put directly at issue section 196.012(13)'s definition of "real estate used and owned as a homestead." As the district court explained, Chapter 196 uses that term only in provisions that have not been applied to Rebholz. The trial court erred by taking up the "constitutionality" of a defined term embedded in those provisions.

But in his arguments to our Court, Rebholz now attempts to use section 196.012(13) to his advantage. He contrasts that provision with section 192.001(8), Florida Statutes (2014), which gives the following definition of the term "homestead": "that property described in s. 6(a), Art. VII of the State Constitution." Rebholz argues that reading sections 196.012(13) and 192.001(8) together shows that homestead property can be used for commercial purposes. Otherwise, says Rebholz, there would be no need for section 196.012(13) explicitly to subtract "any portion thereof used for commercial purposes" from "real property to the extent provided in s. 6(a), Art. VII of the State Constitution."

It is true that, to the extent it is part of the overall statutory scheme governing homestead tax exemptions, section 196.012(13) could inform the meaning of the provisions that are directly applicable to Rebholz. But we do not think that section 196.012(13) helps Rebholz here. Nothing in that provision undermines our analysis showing that, under the constitution and section 196.031(1)(a), the owner or a dependent must himself use property as his residence for that property to qualify for the homestead exemption. Rebholz has perhaps offered an interpretation of section 196.012(13) suggesting that homestead property could be used *both* as a residence *and* for commercial purposes. (The common areas shared by Rebholz and his tenants might be considered an example of such dual use.) We need not decide if Rebholz is right about that, because the record leaves no doubt that Rebholz did not use the disputed 15% of his property as his residence *at all.*

Rebholz also seeks support from section 196.061, Florida Statutes (2014). There, the Legislature says that a homestead is deemed abandoned upon "[t]he rental of all or substantially all of a dwelling previously claimed to be a homestead for tax purposes."

That provision goes on to say that the abandonment "continues until the dwelling is physically occupied by the owner." Rebholz argues that, since it is undisputed that he did not rent out the entire structure, the rental of a single room should not affect his homestead exemption.

We think that section 196.061 has no bearing on this case. The property appraiser does not claim that Rebholz "abandoned" or was absent from his homestead. It is undisputed that Rebholz at all relevant times resided in a portion of the property, and the property appraiser has left intact the homestead exemption as to that portion. Section 196.061 simply does not speak to the circumstances here.

Finally, Rebholz invokes an aspect of section 196.031(4) that we have not yet discussed. In full, that provision reads: "The [homestead] exemption provided in this section applies only to those parcels classified and assessed as owner-occupied residential property or only to the portion of property so classified and assessed." Rebholz notes the undisputed fact that, throughout the tax years at issue, the property appraiser classified and assessed Rebholz's property entirely as owner-occupied residential property.

- 16 -

Rebholz says this means that he is entitled to a homestead exemption on the entire structure. We disagree, for a couple of reasons.

First, section 196.031(4) on its face establishes a necessary condition for the availability of the homestead exemption, but the statute does not say that the classification alone is sufficient. More importantly, by requiring property appraisers to assess back taxes and penalties upon discovering that property has improperly received a homestead tax exemption or Save Our Homes benefit, sections 196.161(1)(b) and 193.155(10) show that mistaken classifications do not control and can be corrected. Rebholz's interpretation of section 196.031(4) would render those remedial provisions ineffective.

**IV.**

We conclude with a word about the scope of our decision today. Unlike the district court in its opinion below, we do not equate Rebholz with the "countless Florida citizens" who are "resid[ing] within their permanent residences" while "working from home." *Furst*, 302 So. 3d at 434. The phrase "working from home" speaks to activity occurring *within* property already found to be the

owner's residence. This case is about defining the scope of the residence in the first instance. Here, Rebholz gave a tenant exclusive use of a portion of Rebholz's property, reserving to himself only the access rights of a landlord. That portion of the property was not Rebholz's residence.

We quash the decision of the Second District (including its holding that Rule 12D-7.013(5) is invalid) to the extent it is inconsistent with our decision here. And we remand the cause for further proceedings consistent with this opinion.

It is so ordered.

CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Class of Constitutional Officers/Direct Conflict of Decisions

Second District – Case No. 2D18-3323

(Sarasota County)

Jason A. Lessinger, J. Geoffrey Pflugner, Anthony J. Manganiello, and Patrick Seidensticker of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, Florida,

for Petitioner Bill Furst

Ashley Moody, Attorney General, and Timothy E. Dennis, Chief Assistant Attorney General, Tallahassee, Florida,

for Petitioner State of Florida, Department of Revenue

Sherri L. Johnson of Johnson Legal of Florida, P.L., Sarasota, Florida,

for Respondent

John C. Dent, Jr. and Jennifer A. McClain of Dent & McClain, Chartered, Sarasota, Florida,

for Amici Curiae Ayesha Solomon, as Property Appraiser of Alachua County, Florida, and Scott P. Russell, as Property Appraiser of Monroe County, Florida

Loren E. Levy and Sydney E. Rodkey of The Levy Law Firm, Tallahassee, Florida,

for Amicus Curiae Property Appraisers' Association of Florida, Inc.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, Jorge Martinez-Esteve and Daija Lifshitz, Assistant County Attorneys, Miami, Florida,

for Amicus Curiae Pedro J. Garcia, as Property Appraiser for Miami-Dade County, Florida